Paul D. Supnik [SBN 52842]
Email: paul@supnik.com
9401 Wilshire Blvd., Suite 1250
Beverly Hills, CA 90212
Telephone: 310-859-0100
Facsimile: 310-388-5645

*Attorney for Defendant Fwoosh LLC*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| HAND CANDY TOYS LLC,<br>Plaintiff,<br>vs.<br>FWOOSH LLC,<br>Defendant | Case No.: 5:21-cv-1040-JGB (KKx)<br>Hon. Jesus B. Bernal<br>**AMENDED REPLY IN SUPPORT OF EX PARTE APPLICATION TO EXTEND TIME TO ANSWER OR RESPOND TO AUGUST 16, 2021** |

Plaintiff Hand Candy Toys LLC ("Hand Candy") has not demonstrated that it will be irreparably harmed by the 30-day extension request and it is only opposing this routine extension to confuse the issues. As stated in Defendant Fwoosh LLC's ("Fwoosh") Ex Parte Application to Extend Time to File Answer or Otherwise Respond to August 16, 2021 (DE. 11), local counsel, Paul Supnik, was very recently retained in the last couple days and has not had an opportunity to appropriately review this matter with lead counsel, Charles Hanor, which is

complicated by the related Arbitration instituted by Plaintiff's manager Adam Van Wickler ("Van Wickler"). *See* Demand for Arbitration (DE. 11-2); *see also* Van Wickler's Objection to Arbitrator's Jurisdiction Over Trademark Counterclaims ("Objection"; DE. 11-8). This extension is not sought for delay. Lead counsel in this case, Charles Hanor, has not even had an opportunity to file for admission pro hac vice in this District. The extension sought conforms with Fed. R. Civ. P. 6(b) and the moving party is not guilty of negligence or bad faith. *See Blanton v. Pacific Mutual Life Ins. Co.*, 4 FRD 200, 205–206 (W.D.N.C. 1944). As this is the first extension request, the privilege of extension has not been abused. *See id.*

## I. PROCEDURAL BACKGROUND AND STATEMENT OF FACTS

On June 29, 2021, a Scheduling Order was entered by the Arbitrator confirming the agreement between the parties, including Adam Van Wickler, manager of Hand Candy Toys LLC, at a Preliminary Hearing on June 25, 2021. *See* Scheduling Order (DE. 11-11). In this Preliminary Hearing, it was decided that Respondents were to file a response to the Objection to hearing trademark ownership in the arbitration by July 9, 2021. *See id.* at ¶ 3. A true and correct copy of Respondent's Response to the Objection ("Response") is annexed hereto as Exhibit A. Van Wickler's reply is due July 16, 2021 and the matter of the Objection would be discussed at a Status Conference to be held July 30, 2021. *See id.* at ¶¶ 3, 7; *see also* Status Conference Notice (DE. 11-10). It was always contemplated in the Arbitration that the Arbitrator would be fully briefed and submit a decision on the matter of arbitrability on the Trademark Counterclaims against Van Wickler. Accordingly, the Parties to the Arbitration have shown their clear and unmistakable intent to delegate the arbitrability question to the Arbitrator because Van Wickler filed his motion to be decided in the arbitration after the issues are to be fully briefed by both Parties.

In the Arbitration, Van Wickler, as Claimant, alleged Defendant Fwoosh LLC ("Fwoosh") and its manager, Paul Wolf ("Wolf"), (collectively "Respondents" where in reference to the Arbitration) breached the Agreement to Van Wickler's financial detriment, specifically with regard to provisions on member distributions. *See* Objection, p. 2. Respondents alleged in their counterclaim that Van Wickler is not owed a distribution because he knowingly and willfully violated the Agreement by starting Hand Candy in competition with Fwoosh and misappropriated the Handprint Logo trademark. *See* Agreement, §§ 4.05; 7.04(b); 8.01(xi) and (xiii). Respondents asserted the Trademark Counterclaims because the claims arise out of the Fwoosh Operating Agreement when Van Wickler, a Fwoosh member bound by the arbitration clause, started the competing Hand Candy business in 2019 in violation of the agreement and misappropriated Fwoosh property for this new business. *See* Agreement (DE. 11-1). The property at issue is a Handprint Logo that was first used as a trademark in 2017 when it was affixed to Fwoosh's goods by the now asserted three members of Hand Candy when they were admittedly working for Fwoosh. These Trademark Counterclaims at issue in the Arbitration are: Federal False Designation of Origin or Source under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count I), Common Law Trademark Infringement (Count II), Common Law Unfair Competition (Count III), and Declaratory Relief to Cancel Fraudulently Obtained Trademark Registrations (Count IV). *See* Respondent's Amended Answer and Counterclaims ("Counterclaims"; DE. 11-3). The basis of Van Wickler's Objection is that Respondents are involving "the conduct of third parties who are not signatories or parties to the arbitration agreement" in order to use Hand Candy—a business formed in violation of the Agreement—as a shield. *Cf*. Claimant's Objection, p. 3.

Further, the actions complained of in the Trademark Counterclaims specifically arise out of Van Wickler's Breach of Contract (Count V) and Breach

of Fiduciary Duty (Count VI) and share the common nucleus of operative fact: starting a new business in violation of the Agreement and fraudulently obtaining trademark Registrations (U.S. Reg. Nos. 6,054,592, 6,054,593, and 6,054,094) for the Handprint Logo after Fwoosh had already established trademark rights in them. Courts usually find contractual phrases such as "arising in connection with" the agreement and "relating to" the agreement to be broad enough to encompass the arbitration of Lanham Act claims where the Lanham Act claims have a significant relationship to the contract between the parties. *See* 6 MCCARTHY'S ON TRADEMARKS AND UNFAIR COMPETITION, § 32:199 (5th ed.). Here, the Trademark Counterclaims claims against Van Wickler have a significant relationship to the Agreement as Van Wickler was a Fwoosh member when he, Akers, and Aldrete were designing the Fwoosh products (including affixing the Handprint Logo to Fwoosh packaging in 2017, prior to Hand Candy's date of first use of any trademark). Van Wicker subsequently appropriated property, bought and paid for by Fwoosh,[1] for Hand Candy—the business competing with Fwoosh in violation of the Agreement and Fwoosh's trademark and intellectual property rights. *See* Agreement, § 4.05. The way Plaintiff wants it, any member of Fwoosh could violate the Agreement and harm Fwoosh by starting a competing business to act as a shield for any wrongful conduct of the individual Fwoosh member just

---

[1] Any services or contributions (including digital files) provided by Akers and Aldrete were furnished as a work-for-hire, whereas Van Wickler did so as a Fwoosh member. A true and correct copy of an email thread between Wolf, Van Wickler, Akers, and Aldrete is annexed hereto as Exhibit B showing Akers and Aldrete sought Fwoosh membership, but were paid for their contributions instead of being offered ownership. True and correct copies of purchase orders showing Akers and Aldrete were paid over $200,000 in total are annexed hereto as Exhibit C.

because the new business would just be considered a nonparty and subsequently excluded from arbitration because "it did not consent to arbitration."

The Handprint Logo is, as a matter of law, the trademark of Fwoosh resulting from its first use in commerce. Priority and ownership of trademark use is not granted to the person who was first to conceive of the idea of using a given symbol as a mark, nor is it gained through invention or creation. *See La Maur Inc. v. International Pharmaceutical Corp.*, 199 U.S.P.Q. 612 (T.T.A.B. 1978). Very simply, being first to register, especially under fraudulent pretenses, does not make someone an owner of a mark. *Sengoku Works Ltd. v. RMC Intern., Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996), as modified, 97 F.3d 1460 (9th Cir. 1996) ("To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services."). It is entirely undisputed Fwoosh used the Handprint Logo in commerce first in accordance with Section 45 of the Lanham Act when it was affixed to its goods at least as early as June 15, 2017 by Van Wickler, Scott Akers ("Akers") and Rene Aldrete ("Aldrete") (who are now estopped from denying Fwoosh's ownership by affixing it to the Fwoosh packaging as they were hired to do). *See* 15 U.S.C. § 1127. Thus, Akers' 2016 "invoices" are not evidence of a legal "trademark" use and are entirely irrelevant when first use by Fwoosh is documented as a matter of public record. "The legally significant use giving rise to rights in a mark for goods is derived from the placing of the mark in some manner on the goods either directly or on their containers or packaging." *Lloyd's Food Prods., Inc. v. Eli's, Inc.*, 987 F.2d 766, 768 (Fed. Cir. 1993). Section 904.04(c) of the Trademark Manual of Examining Procedure ("TMEP") states, "Package inserts such as invoices, announcements, order forms, bills of lading, leaflets, brochures, printed advertising material, circulars, press

releases, and the like are not acceptable specimens to show use on goods. See *In re Bright of Am., Inc.*, 205 USPQ 63 (T.T.A.B. 1979)." (emphasis added). Further, there is no connection between the 2016 invoices and the three trademark registrations. The argument that Hand Candy is the legal first user of the Handprint Logo trademark is disingenuous.

Fwoosh has used the Handprint Logo at least as early as June 15, 2017, when Fwoosh submitted the following photo specimen comprising a photo of a container for the goods in connection with U.S. Reg. No. 5,375,356 into the United States Patent and Trademark Office ("USPTO") for FWOOSH for "action figures" in International Class 28. *See* Respondents' Amended Counterclaims (DE. 11-3), pp. 16–17, ¶ 43.




Notably, Akers, Aldrete, and Van Wickler, now members of competitor Hand Candy, listed themselves as "Design" on the containers for the Fwoosh products with the Handprint Logo, which further supports the estoppel. As a matter of public record, Hand Candy's sworn claimed date of first use in all of the Handprint Logo Registrations is February 16, 2020, which is over two years after Fwoosh's undeniable date of use. Plaintiffs continually emphasizes that the rights of

alleged third parties, Akers, Aldrete, and Hand Candy are implicated by the Trademark Counterclaims.

Plaintiff continually emphasizes that the rights of alleged third parties, Scott Akers ("Akers"), Rene Aldrete ("Aldrete"), and Hand Candy are implicated by the Trademark Counterclaims. However, Respondent pointed out in its Response that Akers, Aldrete, and Hand Candy are not even necessary parties that must be joined in the Arbitration for the Trademark Counterclaims to proceed. *See generally* Ex. A, pp. 3–4 ("The Arbitrator is able to accord complete relief among the existing parties *See* FED. R. CIV. P. 19(a). And the Arbitrator's finding on this issue will not leave these alleged third parties impaired or impeded in their ability to protect the interest as a practical matter or leave them subject to the risk of incurring double, multiple or otherwise inconsistent obligations because of the interest. *See id.* at (b).").

Defendant believes Van Wickler was in control of Hand Candy when the wrongful conduct was committed, as Akers and Aldrete were not publicly listed as managers or members of Hand Candy until 2021. *See* DE. 11-4, 11-5, and 11-6 (filings with the California Secretary of State). Plaintiff provided defendant with an altered and incomplete copy of the Hand Candy Operating Agreement dated March 21, 2019, which is annexed hereto as Exhibit D with Pages 2–11 missing. Akers and Aldrete are listed members in this document, but missing from this is any information regarding the division of member shares and controlling interest. Thus, Defendant believes the wrongful conduct of Van Wickler occurred in his capacity as majority ownership member of Hand Candy. Additionally, it is of note that Van Wickler, Scott and Aldrete and Hand Candy are represented by the same counsel who can adequately represent and protect any possible interests involved. Plaintiff is only trying to confuse the issues on a very simple Motion to Extend Time to Answer by 30 days.

## II. ARGUMENT

The issue of the arbitrability of the dispute may itself be considered and determined by the arbitrator. *See* AAA Rule 7(a) (Oct. 2013) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."). Now, Plaintiff submits that it will be irreparably harmed because "Defendant seeks to delay its time to file such a motion until after the arbitrator has ruled on the arbitrator's jurisdiction," which Van Wickler and Respondents agreed to brief the Arbitrator to specifically rule on, as discussed during the Preliminary Hearing and at the time of service of this suit on June 25, 2021. As it stands, Defendant's responsive pleading under Rule 12(a) or filing a motion under Rule 12(b) is due July 16, 2021, which is the same day Van Wickler is to submit his reply regarding the Objection to arbitrability. Plaintiff is unduly complicating the case and increasing costs by opposing this very routine extension request, which is justified by the circumstances of an already complicated Arbitration.

Plaintiff keeps alleging that Defendant indicated its intent to file a "motion to compel arbitration" in the Arbitration Preliminary Hearing as a fact that this is the course of action Defendant is going to take and are seeking delay to do so. However, this is entirely speculative. Without divulging Defendant's legal strategy, bringing a motion to compel arbitration may not even be necessary or appropriate. When that alleged response was made on June 25, 2021 during the teleconference, Defendant had been served with the lawsuit on the same date and had not had the opportunity to fully contemplate, explore, or evaluate its moves or legal options. Plaintiff is actually attempting to cause Defendant irreparable harm by curtailing its legal options before it has even had a chance to evaluate its

position—Defendant is at risk of waiving arguments it may have to dismiss the declaratory judgment because Plaintiff is adamantly blocking a normal extension only because it seeks to avoid any ruling by the Arbitrator.

Plaintiff claims the requested extension would bring procedural complication. *See* Response in Opposition to Ex Parte Application ("Opposition"; DE. 12), p. 5. Plaintiff's protestations are premature. In fact, the Arbitrator's ruling on jurisdiction (besides being agreed to) is entirely necessary at this point to *avoid* procedural complication. The instant case itself is predicated upon the fact that "Hand Candy Toys LLC is not a named party to the Texas arbitration, though the relief Fwoosh LLC seeks in arbitration seeks to bind Hand Candy Toys LLC. To avoid confusion and resolve all disputes concerning ownership of the Hand Candy logo and Hand Candy Toys LLC's alleged infringement of its own mark, Hand Candy Toys LLC seeks to have this court issue a declaratory judgment with respect to their ownership and non-infringement of the Hand Candy logo registrations." *See* Plaintiff's Complaint (DE. 1), ¶ 19. Specifically, Plaintiff itself states, "Hand Candy Toys LLC has made no appearance in the arbitration matter and has not been specifically named as a Respondent, nor has it agreed to arbitrate any part of the issues before the arbitrator." *See* Plaintiff's Opposition, p. 4.

If the Arbitrator allows the Trademark Counterclaims, Plaintiff states itself that it may seek an injunction. There is no risk of irreparable harm and the Court should grant the requested extension to answer or otherwise respond until August 16, 2021.

Dated July 10, 2021.

/s/

Paul D. Supnik
*Attorney for Defendant Fwoosh LLC*