Connor Lynch (SBN 301538)
connor@lynchllp.com
Brian Lynch (SBN 292511)
brian@lynchllp.com
LYNCH LLP
4470 W. Sunset Blvd. No. 90096
Los Angeles, CA 90027
Phone: (949) 229-3141

Attorneys for Hand Candy Toys LLC.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Hand Candy Toys LLC,<br><br>　　　Plaintiff,<br>　　　　　　v.<br><br>Fwoosh LLC,<br><br>　　　Defendants. | Civil Action No. 5:21-cv-01040-JGB (KKx)<br><br>Plaintiff's Opposition to Defendant's Motion to Dismiss and Motion to Compel Arbitration<br><br>Hon. Jesus G. Bernal<br>Courtroom: 1<br>Date: September 13, 2021<br>Time: 9:00 AM |

**Table of Contents**

I.   Introduction ..................................................................................................................1

II.  Statement of Facts .......................................................................................................2

III. Argument.....................................................................................................................5

   A.   Personal jurisdiction exists because Defendant has substantially more than minimum contacts with California. ......................................................................................6

      1.   Defendant has substantial contacts with California and this judicial district. .................6

      2.   Fwoosh has waived its objection to personal jurisdiction by asking the Court to grant affirmative relief in the motion to compel arbitration. ...........................................................8

   B.   Defendant's alternative motion to transfer venue under 15 U.S.C. section 1404(a) must fail because Defendant doesn't identify a federal court to which the action may be transferred........................................................................................................................10

   C.   Defendant's motion to compel arbitration must fail because the parties have not agreed to arbitrate. ...........................................................................................................10

      1.   Plaintiff is not a party to Defendant's Operating Agreement. ......................................11

      2.   Defendant's "same operative facts" test is a misstatement of law and is not sufficient to compel a party to arbitration who has never agreed to arbitrate. ..........................................11

      3.   Direct-benefits estoppel does not apply because Plaintiff has not received any benefits from the Fwoosh Operating Agreement. ................................................................................12

   D.   Defendant's motion to dismiss for failure to state a claim should be denied because the Complaint adequately alleges ownership of the Hand Candy Toys design trademark. 14

      1.   Registration is prima facie evidence of ownership and validity...................................14

      2.   The Complaint adequately alleges that use of the Hand Candy Toys design mark on the Articulated Icons series was pursuant to a license from Scott Akers and Rene Aldrete, conferring no rights to the mark to Fwoosh, a mere licensee. .............................................14

IV.  Conclusion .................................................................................................................16

# Table of Authorities

**Cases**

*Bayscene Resident Negotiators v. Bayscene Mobilehome Park*,
   18 Cal. Rptr. 2d 626, 633 (Cal. App. 4th Dist. 1993)..............................................12
*CollegeSource, Inc. v. AcademyOne, Inc.*,
   653 F.3d 1066 (9th Cir. 2011) ......................................................................................7
*Dennis v. College Station Hosp., L.P.*,
   169 S.W.3d 282 (Tex. App.–Waco 2005) ..................................................................13
*Hishon v. King & Spalding*,
   467 U.S. 69 (1984) .....................................................................................................15
*Hurtado v. Super. Ct.*,
   522 P.2d 666 (Cal. 1974)............................................................................................12
*Janvey v. Alguire*,
   847 F.3d 231 (5th Cir. 2017) ......................................................................................11
*Mann v. Castiel*,
   681 F.3d 368 (D.C. Cir. 2012)......................................................................................9
*Massa v. Jiffy Products Co.*,
   240 F.2d 702 (9th Cir. 1957) ......................................................................................16
*Nationwide Agribusiness Ins. Co. v. Buhler Barth GmbH*,
   2015 WL 6689572 (E.D. Cal. Oct. 30, 2015).............................................................10
*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1171 (9th Cir. 2014) ....................................................................................11
*Parks School of Bus., Inc. v. Symington*,
   51 F.3d 1480, 1484 (9th Cir. 1995) ............................................................................15
*Peterson v. Highland Music, Inc.*,
   140 F.3d 1313 (9th Cir. 1998) ......................................................................................9
*Picot v. Weston*,
   780 F.3d 1206 (9th Cir. 2015) ..................................................................................6, 7
*S.E.C. v. Ross*,
   504 F.3d 1130 (9th Cir. 2007) ......................................................................................9
*Synaptek, LLC v. Synaptek Corp.*,
   326 F. Supp. 3d 976 (C.D. Cal. 2017) .........................................................................8
*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*,
   363 U.S. 574 (1960) .............................................................................................11, 12

**Statutes**

15 U.S.C. § 1115 ..............................................................................................................14, 15
28 U.S.C. § 1404(a) .................................................................................................................9
9 U.S.C. § 1 ............................................................................................................................10

**Other Authorities**

3 McCarthy on Trademarks and Unfair Competition § 18:52 (5th ed.) .......................................15

## I. Introduction

Plaintiff Hand Candy Toys LLC is a toy design and manufacturing company based in Rancho Cucamonga, California. Defendant Fwoosh LLC is a company formed in Texas that operates a toy news website and bulletin board, thefwoosh.com, and, starting in 2015, a toy sales business based primarily in Southern California. This dispute relates to Fwoosh's activity in toy sales, specifically a line of toys called "Articulated Icons," which it first launched fundraising activity for in Los Angeles, California in 2015, and whose development was spearheaded primarily by Fwoosh member and California resident, Adam Van Wickler.

On the Articulated Icons packaging in 2017 was a logo for Hand Candy Toys, a then un-incorporated venture of Rene Aldrete and Scott Akers, the Articulated Icons design team. To credit the design team and appropriately brand the product, Fwoosh, through its member, Adam Van Wickler, affixed the logo for Rene Aldrete and Scott Akers' venture (pre-formation of the LLC) to the Articulated Icons packaging. This logo is now a registered trademark of Plaintiff. All of this activity occurred in California.

Fwoosh argues that its use of the logo confers trademark rights. Hand Candy Toys, through its Complaint, has alleged that Fwoosh's only use of the logo was that of a licensee, which confers no trademark rights to Fwoosh.

Defendant has moved to dismiss for lack of personal jurisdiction, despite the fact that (1) almost all of its own activity with respect to the Articulated Icons series occurred in this judicial district in California through its member, Adam Van Wickler, including the design of the packaging it contends gives it rights to Plaintiff's mark, (2) it has regularly attended trade shows in California, (3) it promoted, specifically in California, the Articulated Icons project that is the source of this dispute, including through several media interviews participated in from Los Angeles, California, and by holding a booth at a trade show in Anaheim, California in July 2016, (4) more donors to the Articulated Icons series were California residents than were residents of any other state or country, (5) it still employs the services of California residents in its own business, including to promote the Articulated Icons series bearing the packaging at issue, (6) it

prototyped the Articulated Icons series using a Burbank, California company, (7) it shipped the toys from Hong Kong to a U.S. distribution center using a California shipping company, and (8) it paid for the services of two California residents (Aldrete and Akers) to design the toys, and the scope of what it acquired from these two contractors is at the heart of the dispute. These are not incidental contacts; these are substantial and continuous ties to California directly related to the issues at the core of the dispute.

These substantial contacts with California, which relate directly to this dispute, are more than sufficient to satisfy the "minimum contacts" necessary to find personal jurisdiction.

Defendant also asks the Court to compel Plaintiff to arbitration despite the lack of any agreement to arbitrate between the parties. Defendant asks the Court to invoke direct-benefits estoppel, even though Plaintiff has never received any benefits whatsoever from the agreement containing the arbitration clause.

Finally, Defendant asks the Court to dismiss for failure to state a claim because, Defendant contends, Plaintiff has not adequately alleged its own ownership of the registered trademarks attached as Exhibits A, B, and C to the Complaint, which indicate Plaintiff is the owner.

All three of these motions should be denied.

**II.  Statement of Facts**

Defendant Fwoosh is an online message board and news website for toy and action figure hobbyists, https://www.thefwoosh.com, that has operated since the mid-2000s. Van Wickler Decl. ¶ 2. The company and many of its unpaid "volunteers" regularly post updates and news articles related to the toy industry, in turn generating advertising revenue for the company. Van Wickler Decl. ¶ 3. Fwoosh regularly attends industry trade shows in California, such as San Diego Comic Con, with its staff photographer, a resident of San Diego, California, and some of Fwoosh's members, who would then write about their experiences to post on the Fwoosh website and share with the Fwoosh online community. Van Wickler Decl. ¶¶ 3–4.

In summer 2015, Fwoosh began a marketing effort to raise money to launch a series of toys called "Articulated Icons." It announced its efforts in a press release marked "FOR

IMMEDIATE RELEASE: *Los Angeles, CA*." Van Wickler Decl. ¶ 5, Ex. A (https://thefwoosh.com/2015/08/articulated-icons-the-feudal-series-kickstarter-campaign-coming-soon/). A campaign on Kickstarter, an online platform for raising money from small-dollar donors, launched later that year. Van Wickler Decl. ¶ 6. The Articulated Icons series is the genesis of the current dispute. These products were designed in California, they were prototyped in Burbank by a California company, the marketing campaign began in and was conducted primarily in California, and all major business of Fwoosh regarding the product line took place in California. Van Wickler Decl. ¶ 7. Van Wickler, for Fwoosh, in conjunction with Aldrete and Akers, chose the manufacturer and distributor, conducted quality control, directed marketing and promotion, and performed customer service all from California. Van Wickler Decl. ¶ 7.

In July 2016, Fwoosh hosted a booth at Power-Con, a toy industry trade show in Anaheim, California, to promote both fundraising and sales for the Articulated Icons series. Van Wickler Decl. ¶ 8. Attending the event for Fwoosh were two of its members, Adam Van Wickler and Nic Wood, and also attending with Fwoosh were Aldrete and Akers, as contractors (then doing business as Hand Candy Toys) who had developed the design and sculpt of the Articulated Icons series and who would later perform quality control of the final product. Van Wickler Decl. ¶¶ 7, 13.

Akers had been doing business as "Hand Candy Toys" since at least as early as 2009, and in 2016, he teamed with Rene Aldrete to design a corresponding graphic mark for use in their business. Akers Decl. ¶ 3. Together in 2016, they developed and created a design mark, which depicts a piece of candy within a hand (i.e., hand candy), and they began using that design mark in connection with their toy design and refurbishment services in 2016. Complaint ¶ 10.

Fwoosh and Hand Candy Toys' marketing and fundraising efforts for the Articulated Icons series were very successful. Fwoosh raised over $300,000 for the Articulated Icons project on Kickstarter. Van Wickler Decl. ¶ 11. As might be expected for a marketing and fundraising effort located in California and directed at California residents, more donors and buyers were California residents than were from any other state or country. Van Wickler Decl. ¶ 11.

By 2017, the product series neared readiness for the consumers, and Mr. Van Wickler, for Fwoosh, designed the final product packaging for the Articulated Icons series from his home in Los Angeles, California. Van Wickler Decl. ¶ 12. The packaging gives credit to those involved in the product's design, including Aldrete and Akers; it also includes the design logo of their d/b/a, Hand Candy Toys. D.I. 26-3 at 15, Van Wickler Decl. ¶ 12. To date, Fwoosh's only known use of the Hand Candy Toys logo has been that of a licensee, acting within the scope of its limited license. Before any customer and donor orders were fulfilled, Aldrete and Akers, for the d/b/a Hand Candy Toys, and Van Wickler, for Fwoosh, performed quality control on the final Articulated Icons products in Los Angeles, Glendale, and Rancho Cucamonga, California. Van Wickler Decl. ¶ 13.

Once products began to ship in mid-2017 from Hong Kong through a California shipping company, Van Wickler Decl. ¶ 14, what had begun as a hobby project had accumulated enough money to plant the seeds of acrimony. The two chief creative designers of the Articulated Icons series, Aldrete and Akers, were contractors who, contrary to their understanding of their arrangement with Fwoosh, had not received any share of profits from the sales of their copyrighted works. Akers Decl. ¶¶ 5-6. Within Fwoosh, Van Wickler lacked authority to unilaterally compensate them and, given his friendship with Aldrete and Akers, deferred negotiation of their compensation to Fwoosh's Manager, Paul Wolf (a resident of Denmark). Van Wickler Decl. ¶ 15. In January and February 2018, Fwoosh offered, and Akers and Aldrete accepted, Fwoosh's offer to pay them each $102,433.05. Akers Decl. ¶ 6. An arbitration term was never included, nor ever mentioned by anyone, as part of this compensation agreement. Akers Decl. ¶ 7. Fwoosh delayed following through on its promise until November 29, 2018 and December 17, 2018, when Mr. Wolf, for Fwoosh, paid each of Aldrete and Akers $102,433.05, respectively. Alredete Decl. ¶ 7, Akers Decl. ¶ 7.

Though Fwoosh now characterizes these payments as settlements of claims to membership interests in Fwoosh LLC, Aldrete and Akers were never members of Fwoosh LLC, never agreed to be bound by the Fwoosh Operating Agreement, and, at the time of Fwoosh's offer to pay and

their acceptance, had never even seen the Fwoosh Operating Agreement. Alredete Decl. ¶ 7, Akers Decl. ¶ 7. Indeed, Fwoosh has, in the Texas arbitration against Van Wickler, alleged just the opposite of its current contention: "Wolf made an offer regarding the profits considering Aldrete and Akers' *roles as contractors as opposed to business partners*, i.e., Fwoosh members, and their contribution to the project in determining the amount." Docket No. 11-3 at 10, ¶ 12.

Around the same time in 2018, Mr. Wolf and Fwoosh's other members began to exclude Mr. Van Wickler from active management of Fwoosh LLC, though he remains a member to this day. Van Wickler Decl. ¶ 16. As he later discovered through exercise of his rights as a member to access Fwoosh's books and records, Fwoosh would also begin to exclude him from distributions paid to the members of Fwoosh LLC. Van Wickler Decl. ¶ 17.

To resolve Fwoosh's unpaid distributions, Mr. Van Wickler, as a member of Fwoosh, initiated arbitration in Texas in April 2021 against Fwoosh and its manager pursuant to an arbitration clause in the Fwoosh Operating Agreement. Van Wickler Decl. ¶ 18. Contrary to Fwoosh's representation to this Court, Hand Candy Toys has not intervened in that arbitration and does not intend to. Van Wickler, in defense of counterclaims asserted against him personally, has argued that Hand Candy Toys is an indispensable party to an action that seeks to cancel trademark registrations owned by Hand Candy Toys, and that the arbitrator lacks authority to determine whether Hand Candy Toys may be compelled to arbitration.

Hand Candy Toys LLC initiated this action to resolve the dispute over ownership of its design mark after it learned that Fwoosh sought to have Hand Candy Toys' trademark registrations cancelled and to recover money from Hand Candy Toys for alleged infringement by Hand Candy Toys in an arbitration that it never agreed to participate in.

### III.  Argument

Defendant's brief argues three separate motions, each of which should be denied. First, the Court may exercise personal jurisdiction over Fwoosh because substantially all of its activities giving rise to the current dispute were based in California.

Second, the Court should not compel arbitration in Texas because there is no arbitration agreement between the parties, and Fwoosh's only argument for compelling a non-party to arbitration, under direct-benefits estoppel, must fail because Hand Candy Toys is not and never has been a third-party beneficiary of the Fwoosh Operating Agreement.

Third, Fwoosh's motion to dismiss for failure to state a claim should be denied because its only basis for assertion—that Hand Candy Toys' trademark ownership allegations are insufficient—is belied by the trademark registrations showing that Hand Candy Toys is the owner of the registered marks at issue. Fwoosh's allegations that it has senior, unregistered rights in the mark are defeated by the Complaint's allegation that Fwoosh's only use was that of a licensee.

### A. Personal jurisdiction exists because Defendant has substantially more than minimum contacts with California.

In the absence of an applicable federal statute, the Court may exercise personal jurisdiction over a defendant if doing so is consistent with California's long-arm statute, which extends personal jurisdiction over a defendant whenever such exercise is consistent with the U.S. Constitution. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). Personal jurisdiction may be exercised over the defendant here because it has more than sufficient contacts with California to subject it to personal jurisdiction in this state.

#### 1. Defendant has substantial contacts with California and this judicial district.

The Ninth Circuit "employ[s] a three-part test to assess whether a defendant has sufficient contacts with the forum state to be subject to specific personal jurisdiction." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). The prongs are: "(1) the non-resident defendant must purposefully avail himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws, or purposefully direct his activities or consummate some transaction with the forum or resident thereof; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable." *Id.* The plaintiff has the burden of proving the first two prongs. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d

1066 (9th Cir. 2011). If a plaintiff does so, "the burden shifts to the defendant to set forth a compelling case that the exercise of jurisdiction would not be reasonable." *Picot*, 780 F.3d at 1212.

While the action here is one for declaratory judgment over the ownership and non-infringement of Plaintiff's trademark, a primary dispute between the parties that is necessary to resolve that issue is whether, when Mr. Van Wickler, a member and agent of Fwoosh, designed and approved the product packaging of the Articulated Icons series for Fwoosh in California in 2017, his inclusion of Plaintiff's mark created substantive rights in the mark for Fwoosh, or instead whether, as the Complaint alleges (¶ 15), Fwoosh's use was that of a mere licensee, conferring no rights in the mark to Fwoosh.

"[A] claim dependent on the existence of an underlying contract sounds in contract, as opposed to tort." *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015). The minimum-contacts inquiry thus focuses on whether Fwoosh purposefully availed itself of the privilege of conducting business in California through the contract. *Id.*

This case isn't a close call. Substantially all of Fwoosh's activity giving rise to the dispute over the scope and existence of the license to the logo on the Articulated Icons series occurred in California.

Fwoosh LLC has enjoyed a systematic and continuous presence in California since its formation, as two of its five initial members were residents of California at formation, D.I. 11-1 at 20, and at times relevant to this dispute, one of its four members performed all work on the project for Fwoosh from his location in Los Angeles, California. Fwoosh's staff photographer, a regular contributor to Fwoosh's news website, is also a resident of San Diego, California.

Fwoosh's other activity directed at California and related to the license include:

- Fwoosh used California designers (Aldrete and Akers) to create the Articulated Icons series.
- Fwoosh member and California resident, Van Wickler, was responsible for almost all major activity of Fwoosh regarding the Articulated Icons line, including the

design of the Articulated Icons packaging, marketing decisions, manufacturer and distributor selection, customer service, and media interviews, and all of that activity took place in California in this judicial district.

- Quality control of the Articulated Icons series took place in California at the direction of Aldrete and Akers, for Hand Candy Toys, and Van Wickler, for Fwoosh.
- Fwoosh hosted a booth at a July 2016 trade show in Anaheim, California, to promote the Articulated Icons series in California.
- Fwoosh announced the Articulated Icons series in a press release from Los Angeles, California.
- During the 2015–2017 Articulated Icons Kickstarter campaign, Fwoosh had more donors who were California residents than were residents of any other state or country.

Fwoosh's claim to ownership of Plaintiff's registered mark, and its claim that Plaintiff infringes, arises directly from Fwoosh's use of that mark as a licensee in California. In *Synaptek, LLC v. Synaptek Corp.*, 326 F. Supp. 3d 976, 984 (C.D. Cal. 2017), the court was "perplexed" at why the defendant characterized its contacts as "attenuated" when it hired employees in California, sent materials and supplies to those employees, and directed additional employees to travel and work in California. As explained above, Defendant's contacts with California, including its California member who spearheaded the project at issue, the supplies it has sent to California, persistent engagement with California infrastructure, and its sending additional agents to California to perform work, are but a few of Fwoosh's many acts availing itself of California's laws and infrastructure, and are even more extensive than those contacts in *Synaptek*.

**2. Fwoosh has waived its objection to personal jurisdiction by asking the Court to grant affirmative relief in the motion to compel arbitration.**

Fwoosh has brought three motions: one, a motion to dismiss for lack of personal jurisdiction and, in the alternative, to transfer the action somewhere in Texas, two, a motion to

compel arbitration, and three, a motion to dismiss for failure to state a claim. Only the motion to transfer venue is brought in the alternative.

A motion to compel arbitration is not like these other Rule 12 motions. Fwoosh asks for affirmative relief from this Court—namely, to compel Plaintiff to arbitration pursuant to the Federal Arbitration Act.

"Rule 12(h)(1) specifies the minimum steps that a party must take in order to preserve a defense. It does not follow, however, that a party's failure to satisfy those minimum steps constitutes the only circumstance under which the party will be deemed to have waived a defense." *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1318 (9th Cir. 1998), *as amended on denial of reh'g and reh'g en banc* (June 15, 1998).

In general, "a party cannot simultaneously seek affirmative relief from a court and object to that court's exercise of jurisdiction." *S.E.C. v. Ross*, 504 F.3d 1130, 1148 (9th Cir. 2007); *see also Mann v. Castiel*, 681 F.3d 368, 374 (D.C. Cir. 2012) (explaining that "when 'a party seeks affirmative relief from a court, it normally submits itself to the jurisdiction of the court with respect to the adjudication of claims arising from the same subject matter.").

Because Defendant has both moved the Court for substantive relief and objected to its jurisdiction, the Court must choose whether to recast Defendant's motion to compel arbitration as one sought only in the alternative to its jurisdictional objections or alternatively find that Defendant has waived its jurisdictional objection. *See Nationwide Agribusiness Ins. Co. v. Buhler Barth GmbH,* 2015 WL 6689572, at *2 (E.D. Cal. Oct. 30, 2015). In *Buhler*, a defendant sought a motion to compel arbitration and, in the alternative, sought to dismiss for want of personal jurisdiction. *Id.* The court recognized that it would be "improper for the Court to rule on the motion to compel arbitration by assuming that [the defendant] has temporarily waived personal jurisdiction objections, only to subsequently rule on [defendant's] motion to dismiss for lack of personal jurisdiction." *Id.*

The Court should not follow *Buhler*'s approach to correcting defendant's moving papers. Unlike the *Buhler* defendant, Fwoosh does not bring its motion to compel arbitration as an

alternative motion and merely list the alternatives in the wrong order; it asks the Court both to dismiss for want of jurisdiction *and* to compel arbitration. *See* D.I. 26-6, Proposed Order. It has thus waived any objection it might have had to the Court's exercise of personal jurisdiction.

**B. Defendant's alternative motion to transfer venue under 15 U.S.C. section 1404(a) must fail because Defendant doesn't identify a federal court to which the action may be transferred.**

Defendant's motion is confusing. It asks to transfer venue "under section 1404(a) on forum non conveniens grounds." But "Section 1404(a) is [] a codification of the doctrine of forum non conveniens for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer." *A. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 60 (2013). This is not such a case. Defendant identifies no federal court to which it contends this action should be transferred, so its motion to transfer "under section 1404(a)" must fail.

To the extent Defendant is requesting dismissal based on the doctrine of forum non conveniens and the existence of an arbitration clause, its argument should fail for the same reason its separate motion to compel arbitration fails: there is no agreement between the parties to arbitrate any dispute whatsoever, let alone one that could be construed as a forum selection clause.

**C. Defendant's motion to compel arbitration must fail because the parties have not agreed to arbitrate.**

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.,* "requires federal district courts to stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration agreement." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). The Act "limits the district court's role to determining whether a valid arbitration agreement exists" between the parties "and whether the agreement encompasses the disputes at issue." *Id.*

"While there is a strong federal policy favoring arbitration, the policy does not apply to the initial determination whether there is a valid agreement to arbitrate." *Janvey v. Alguire*, 847 F.3d 231 (5th Cir. 2017). "[A] party cannot be required to submit to arbitration any dispute which he

has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960).

"In determining whether a valid arbitration agreement exists, federal courts apply ordinary state-law principles that govern the formation of contracts." *Id.* In a California forum, California law is presumed to apply to those issues, *see Hurtado v. Super. Ct.*, 522 P.2d 666, 670 (Cal. 1974), and Defendant presents no argument that another state's law should apply to the threshold issue of whether a binding agreement between the parties exists.

### 1. Plaintiff is not a party to Defendant's Operating Agreement.

Fwoosh admits that Plaintiff "is not an explicit signatory to the Fwoosh Operating Agreement." Indeed, Plaintiff is neither an explicit nor implicit signatory to the Fwoosh Operating Agreement. Nor is it party to the Fwoosh Operating Agreement.

Two of Plaintiff's three members had never even seen the Fwoosh Operating Agreement at the time Defendant argues those two members had sought its benefits. The only member who was aware of the Fwoosh Operating Agreement's terms (and who is individually bound by that agreement) lacked authority to bind Hand Candy Toys to it, and in any event, Defendant does not actually argue that he ever purported to agree on Hand Candy Toys' behalf to be bound by it.

### 2. Defendant's "same operative facts" test is a misstatement of law and is not sufficient to compel a party to arbitration who has never agreed to arbitrate.

Defendant quotes from a Texas case for the broad proposition that any time a signatory to an arbitration agreement has claims against any non-party, the non-party may be compelled to arbitration as though a party as long as the claims "are inherently inseparable." For obvious reasons, this is not the law. For one, compelling non-consenting parties to adjudicate disputes in arbitration who had never agreed to any form of arbitration with one another would violate due process, *see Bayscene Resident Negotiators v. Bayscene Mobilehome Park*, 18 Cal. Rptr. 2d 626, 633 (Cal. App. 4th Dist. 1993), and Supreme Court precedent, *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). Party A and Party B simply cannot agree amongst themselves to arbitrate their disputes with Party C.

In *Dennis v. College Station Hosp., L.P.*, 169 S.W.3d 282, 284 (Tex. App.–Waco 2005), a hospital had recruited a physician, Wiley Dennis, to open a cancer treatment center. It had one agreement, a Recruiting Agreement, directly with Dennis. *Id.* It had another, a Professional Services Agreement, with his professional association. *Id.* The PSA contained an arbitration clause, but the Recruiting Agreement did not. *Id.* After a dispute arose, the Hospital alleged in court that Dennis violated the Recruiting Agreement. *Id.* Dennis counterclaimed under the PSA and argued the entire dispute should be arbitrated under the PSA's arbitration clause. *Id.*

Though that court does not elaborate on its reasoning, it appears Dennis claimed as a third-party beneficiary under the PSA, the parties did not dispute his right to do so, and the court merely construed (broadly) the scope of the arbitration clause in the PSA between the Hospital and Dennis as a third-party beneficiary of the PSA to also include claims brought under the Recruiting Agreement.

This case is not analogous to *Dennis*. Hand Candy Toys has not invoked arbitration of any kind, of any claims, against Defendant Fwoosh. No arbitration agreement of any scope exists between Hand Candy Toys and Fwoosh. Contrary to Defendant's evidence-free assertion, Hand Candy Toys has not intervened in the arbitration. To the extent *Dennis* really does stand for the broader proposition advanced by Defendant that non-parties everywhere can be thrust into arbitration if only others agree to it, the decision is incorrect and inconsistent with California law and Supreme Court precedent, and Defendant has offered no reason why this Court should follow it.

As explained below, the only real legal theory Defendant advances—direct-benefits estoppel—has no basis in fact for application here.

### 3. Direct-benefits estoppel does not apply because Plaintiff has not received any benefits from the Fwoosh Operating Agreement.

Direct benefits estoppel may permit an arbitration agreement to reach a non-signatory who "knowingly exploits" the benefits of an agreement and "receives benefits flowing directly from the agreement." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014). When a

non-party is not a third-party beneficiary to an agreement, he is "not the type of non-signatory contemplated by the rule." *Id.*

Here, Defendant argues that Fwoosh's payment to Akers and Aldrete was a benefit "knowingly received under section 2.09 of the Fwoosh Operating Agreement." But Fwoosh has alleged as true the exact opposite contention in its submissions to the arbitrator: "Wolf made an offer regarding the profits considering Aldrete and Akers' roles as contractors as opposed to business partners." D.I. 11-3 at 11, ¶ 12.

According to Fwoosh's current briefing, any contribution of money, services, or property to Fwoosh somehow creates a membership interest in the Company. Fwoosh's Operating Agreement authorizes no such creation of membership interests (*see* D.I. 11-1 ¶ 2.04). In any event, Fwoosh does not actually contend that Akers or Aldrete ever possessed a membership interest in Fwoosh LLC. As a matter of fact, Akers and Aldrete never asked for or received any membership interests in Fwoosh LLC. Instead, they sought payment for their creative work on the Articulated Icons series. Fwoosh agreed to pay them each a little over $100,000 at the beginning of 2018, and it finally made good on that promise only by December 2018. In connection with payment, Fwoosh's Manager, Mr. Wolf, sent Akers and Aldrete each an invoice purporting to include additional terms incident to payment. These additional terms did not include an arbitration provision, and nowhere in their discussions is there any reference to arbitration.

Akers and Aldrete had never even seen the Fwoosh Operating Agreement at any of the times Fwoosh contends they were seeking its benefits. That they "were privy" to its terms is not "indisputable"; it is disputed, and Fwoosh offers only conjecture in support of its contention that they were aware of the Operating Agreements' terms when they sought payment for their work.

Even if *all three* of Hand Candy Toys LLC's individual members had agreed to arbitrate individual disputes with Fwoosh, Fwoosh does not explain why that would be sufficient to bind Hand Candy Toys LLC to the same agreement absent, at minimum, some intent by Hand Candy Toys LLC to be bound or a viable alter ego theory, which Defendant does not contend here.

13                              PLAINTIFF'S OPPOSITION TO
                                  DEFENDANT'S MOTION TO DISMISS

**D. Defendant's motion to dismiss for failure to state a claim should be denied because the Complaint adequately alleges ownership of the Hand Candy Toys design trademark.**

On motion to dismiss under Rule 12(b)(6), a court must take all allegations of material fact in the complaint as true and construe them in the light most favorable to the nonmoving party. *Parks School of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal is not appropriate unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

Here, Defendant contends only that Plaintiff's allegation of trademark ownership is conclusory, and thus no controversy over ownership exists. Defendant is wrong: Plaintiff's trademark registrations are prima facie evidence of ownership, and they are sufficiently pled. In any event, even if Defendant were correct, a controversy over ownership would still exist because Defendant seeks to cancel Plaintiff's trademark registrations and enjoin its use of the mark through judicial process, and dismissal would not resolve that controversy.

**1. Registration is prima facie evidence of ownership and validity.**

Under the Lanham Act, trademark registration "shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration." 15 U.S.C. § 1115(a).

Plaintiff has alleged the existence of a registered trademark owned by Plaintiff. Complaint ¶¶ 7–8, Exs. A, B, C. This is not only sufficient to plead ownership, it is prima facie *evidence* of Plaintiff's ownership.

**2. The Complaint adequately alleges that use of the Hand Candy Toys design mark on the Articulated Icons series was pursuant to a license from Scott Akers and Rene Aldrete, conferring no rights to the mark to Fwoosh, a mere licensee.**

Defendant contends that because it submitted a specimen in connection with registration of its own mark, that somehow the presence of Plaintiff's mark in that specimen is sufficient to establish Defendant's ownership of the mark. Defendant is wrong.

The Complaint alleges that Fwoosh LLC had a "limited license to use the Hand Candy logo in connection with goods designed by Akers and Aldrete." It further alleges that Fwoosh's *only* use of the mark is that of a licensee. Complaint ¶ 15. The specimen relied on by Defendant Fwoosh, D.I. 26-3 at 15, is entirely consistent with this allegation: it indicates the product was designed by Akers and Aldrete, and it thus bears the mark consistent only with the limited license granted to it.

That Fwoosh understood it had no ownership rights to the logo is further evidenced by the fact that, at the time it was submitting trademark registrations in connection with this product packaging, it never submitted an application for registration of the Hand Candy Toys logo. Fwoosh's claim to have any trademark rights at is also undermined by the fact that the registered trademark (of a different mark) that it submits in support of its position is actually owned by Paul Wolf, its Manager. D.I. 26-3 at 3–4; *cf. Massa v. Jiffy Products Co.*, 240 F.2d 702, 705 (9th Cir. 1957) (owner of registered trademark becomes a necessary party in action regarding that mark).

"A licensee's use inures to the benefit of the licensor-owner of the mark and the licensee acquires no ownership rights in the mark itself." 3 McCarthy on Trademarks and Unfair Competition § 18:52 (5th ed.). This is the rule even where the licensee's use is a first use. *See* 15 U.S.C. § 1055.

Regardless of who first used the mark in commerce, Fwoosh's licensed use of the Hand Candy Toys mark confers no rights whatsoever in the mark to Fwoosh.

## IV. Conclusion

For the foregoing reasons, the Court should deny Defendant's motion to dismiss for lack of personal jurisdiction, deny Defendant's alternative motion to dismiss or transfer under 28 U.S.C. § 1404(a), deny Defendant's motion to compel arbitration, and deny Defendant's motion to dismiss for failure to state a claim.

DATED: August 23, 2021

LYNCH LLP

By /s/ Connor Lynch
Connor Lynch
*Attorneys for Plaintiff*
*Hand Candy Toys LLC*