Paul D. Supnik [SBN 52842]
Email: paul@supnik.com
9401 Wilshire Blvd., Ste. 1250
Beverly Hills, CA 90212
Telephone: (310) 859-0100
Facsimile: (310) 388-5645

Attorney for Defendant
Fwoosh, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| Hand Candy Toys, LLC,<br><br>    Plaintiff,<br><br>vs.<br><br><br><br>Fwoosh, LLC,<br><br>    Defendant. | Case No. 5:21-cv-01040-JGB (KKx)<br><br>Hon. Jesus G. Bernal<br>Courtroom: 1<br>Date: September 13, 2021<br>Time: 9:00 AM<br><br>**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT AND COMPEL ARBITRATION** |

i

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .................................................................................................. iii

**COUNTERSTATEMENT OF FACTS** .................................................................................. 1

**ARGUMENTS** ....................................................................................................................... 4

    **I.**    **MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO RULE 12(b)(2)** ............................. 4

        A. PLAINTIFF'S COMPLAINT DID NOT MAKE A PRIMA FACIE SHOWING OF PERSONAL JURISDICTION, AND ONLY NEWLY ALLEGES BASES FOR GENERAL JURISDICTION ..................................................................... 4

        B. THE NEW ALLEGATIONS REGARDING GENERAL JURISDICTION IN PLAINTIFF'S OPPOSITION STILL FAIL AS THESE ALLEGED CONTACTS ARE NOT "SYSTEMATIC AND CONTINUOUS" SO AS TO RENDER FWOOSH, LLC "AT HOME" IN CALIFORNIA ............................................. 5

        C. THE COMPLAINT ALSO FAILS TO ALLEGE SPECIFIC JURISDICTION AS THESE ALLEGED CONTACTS ARE UNRELATED TO THE CAUSE OF ACTION ASSERTED ....................................................................... 8

        D. FWOOSH HAS NOT WAIVED ITS ARGUMENT REGARDING DISMISSAL FOR LACK OF PERSONAL JURISDICTION .................................... 10

    **II.**   **MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO RULE 12(b)(2) OR, IN THE ALTERNATIVE, TRANSFER** ............................................................... 11

    **III.**  **MOTION TO COMPEL ARBITRATION** ........................................... 11

    **IV.**  **MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO RULE 12(b)(6)** ............................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Butcher's Union Loc. No. 498, United Food & Com. Workers v. SDC Inv., Inc.*, 788 F.2d 535 (9th Cir. 1986)................................................................................8

*CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066 (9th Cir. 2011) ...............7

*Congoleum Corp. v. DLW Aktiengesellschaft*, 729 F.2d 1240 (9th Cir. 1984).........7

*Daimler AG v. Bauman*, 571 U.S. 117 (2014).............................................. 5, 6, 7, 8

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280 (9th Cir. 1977)...............6

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) ...............4

*Hanson v. Denckla*, 357 U.S. 235 (1958) .................................................................9

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984)...... 4, 7, 8

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984)............................................8

*Martinez v. Aero Caribbean*, 764 F.3d 1062 (9th Cir. 2014) ................................5, 7

*Milliner v. Bock Evans Fin. Couns., Ltd.*, 114 F. Supp. 3d 871 (N.D. Cal. 2015)..11

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151 (9th Cir. 2006) ......................... 4, 5, 10

*Picot v. Weston*, 780 F.3d 1206 (9th Cir. 2015) .....................................................8, 9

*Prescott v. Slide Fire Sols., LP*, 341 F. Supp. 3d 1175 (D. Nev. 2018) ....................7

*Ranza v. Nike, Inc.*, 793 F.3d 1059 (9th Cir. 2015) ...............................................5, 8

*Shaffer v. Heitner*, 433 U.S. 186 (1977) ...................................................................8

*Tr. of Summers Fam. Tr. TA Neak Prod. Buff WA Pty, Ltd. v. Nat'l Distribution Warehouse, Inc.*, No. 2:20-CV-10741-CAS-EX, 2021 WL 2354507 (June 7, 2021)........................................................................................................10

*Walden v. Fiore*, 571 U.S. 277, 283–84 (2014)....................................................8, 9

**Statutes**

15 U.S.C. § 1064......................................................................................................12

15 U.S.C. § 1119......................................................................................................12

28 U.S.C. § 1391 ...............................................................................................................11

28 U.S.C. § 1404(a) ..................................................................................................... 10, 11

**Rules**

FED. R. CIV. P. 12(b)(2)......................................................................................................4

FED. R. CIV. P. 12(b)(3)............................................................................................... 10, 11

FED. R. CIV. P. 12(b)(6)....................................................................................................12

## COUNTERSTATEMENT OF FACTS

Plaintiff Hand Candy Toys, LLC ("Hand Candy" or "Plaintiff") severely mischaracterizes the basis of this dispute, which is the Handprint Logo—not the line of toys by Defendant Fwoosh ("Fwoosh" or "Defendant") entitled Articulated Icons: The Feudal Series ("Articulated Icons"). Hand Candy argues that Hand Candy was a "then unincorporated venture," which is synonymous with "the entity did not exist." *See* Opposition (DE. 28), p. 4. Now, Plaintiff incredibly claims with no corroboration that Adam Van Wickler ("Van Wickler") placed the logo on the Articulated Icons package for Scott Akers' ("Akers") and Rene Aldrete's ("Aldrete") to "credit the design team and appropriately brand the product" for the "then unincorporated venture." *See* Opposition, p. 4. Articulated Icons was released 2017. Hand Candy was not formed until 2019. Fwoosh was not aware of any separate venture of Hand Candy at any point during the development of Articulated Icons, nor was Articulated Icons a collaboration between Fwoosh and non-existent entity Hand Candy. The product packaging literally states, "Articulated Icons: The Feudal Series is the property of Fwoosh LLC." *See* Motion (DE. 26-1), p. 7. Akers, and Aldrete were credited by Van Wickler on the packaging and there was no affiliation to Hand Candy, formal or informal. In fact, Hand Candy was surreptitiously formed in 2019 by Van Wickler with Akers and Aldrete, who did not inform any Fwoosh members of its creation as a competing business. Wolf Declaration (DE. 26-5), ¶ 12. Fwoosh managing member Paul Wolf ("Wolf") only became aware of the existence of Hand Candy in January 2021 because social media platform Instagram recommended its profile. *Id.*

Further, Fwoosh has never been "based primarily in Southern California" just by virtue of dissociated member Van Wickler's residence in the state. Van Wickler ceased participating in Fwoosh of his own volition in late 2018 and started the

1

competing business Hand Candy in early 2019 in violation of his agreement to Fwoosh—establishing and finalizing his nonparticipation in Fwoosh. *See* Wolf Declaration (DE. 26-5), ¶ 6 ("on September 12, 2018, Van Wickler sent an email stating, 'Making toys is my chosen profession and I plan on continuing to do it, for what it's worth I'm sorry we couldn't make that work together long term.'").

Now, Hand Candy argues dismissal for lack of personal jurisdiction is inappropriate where "almost all of its own activity with respect to the Articulated Icons series occurred in this judicial district in California through its member, Van Wickler." *See* Opposition, p. 4. However, the Articulated Icons series never remotely had "almost all of its activity" in California and is not at dispute in this matter and these jurisdictional allegations do not confer specific personal jurisdiction with respect to the actual Handprint Logo itself. Next, Hand Candy, where it did not allege so in its Complaint, now asserts general jurisdiction exists because of systematic and continuous activity in California, as well as specific jurisdiction.

First, it asserts Fwoosh has regularly attended trade shows in California. Members of Fwoosh attended San Diego Comic Con, as do most toy and comic enthusiasts around the world. However, attendance was unrelated to business. Second, it asserts a global press release written by Van Wickler began marketing in Los Angeles, California—even though it does not target California residents at all. All industry press releases have a city and state listed in the dateline indicating where the story was written or filed—it is not evidence that a business is based somewhere. Third, Hand Candy states, "The Articulated Icons series is the genesis of the current dispute," which is false because the declaratory judgment sought by Plaintiff is only with respect to the Handprint Logo. The intellectual property rights of Fwoosh in Articulated Icons are undisputed here. Fourth, it uses a singular, isolated attendance at Power-Con in Anaheim 2016 as part of a fundraising effort for Articulated Icons

to support jurisdiction, even though no products bearing the Handprint Logo were sold because the product did not launch until 2017. Further, the Handprint Logo was not in existence at this time or on display at the booth in anyway, as can be seen in Plaintiff's own pictures. *See* Van Wickler Declaration (DE. 28-1), ¶ 8; *see also* Akers Declaration (DE. 28-3) ¶ 4 (Akers and Aldrete had the Handprint Logo "no later than October 19, 2016," albeit not a legal trademark use, which is the earliest time alleged by Hand Candy).

Finally, Akers and Aldrete were not hired by Fwoosh and worked as volunteers. *See* DE. 15-2, pp. 4–5 (showing Aldrete stated he "poured a ton of time into this project without any contract" and that he "did all of this work without any contract"). It was only when the project was profitable that Akers and Aldrete sought partnership positions outside of "contractor"-status and pursued partnership in Fwoosh under the Operating Agreement, using their contributions to Articulated Icons as leverage. *See* DE. 11-1, § 2.09. Ultimately, Fwoosh members decided against extending partnership and bought them out for $102,433.05 each in late 2018 to settle the matter. And while Van Wickler now falsely states he was "being excluded" from active participation in Fwoosh, Van Wickler left of his own accord in late 2018, alleged unhappy with the way Fwoosh allegedly treated Akers and Aldrete and being outvoted by the other Fwoosh partners—at which point Van Wickler started his own business with them in Hand Candy in 2019. *See* Wolf Declaration, ¶ 6. Unrelated to this dispute, Van Wickler was removed from member distributions because he voluntarily dissociated himself pursuant to the Fwoosh Operating Agreement. *See id.*; *see also* DE. 11-1, § 8.01(xiii).

## I. Arguments
## II. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO RULE 12(b)(2)

### A. PLAINTIFF'S COMPLAINT DID NOT MAKE A PRIMA FACIE SHOWING OF PERSONAL JURISDICTION, AND ONLY NEWLY ALLEGES BASES FOR GENERAL JURISDICTION

In its Opposition, Plaintiff has not made a prima facie showing of personal jurisdiction—from either a general jurisdiction or specific jurisdiction analysis. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). Although Plaintiff's Complaint does not indicate whether it alleges general or specific jurisdiction over Defendant, Plaintiff's only jurisdictional allegations related solely to the assertion of specific jurisdiction. General jurisdiction subjects a party to suit for any cause of action for which the forum court has subject matter jurisdiction—regardless of the connection between the forum and the cause of action. This means that defendant's activities must essentially render it at home the forum state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). In short, none of the activities identified by Plaintiff rise to the level of "systematic and continuous" sufficient to confer general jurisdiction. Defendant is a Texas business and is not "at home" in California.

Specific jurisdiction exists when a case "aris[es] out of or relate[s] to the defendant's contacts with the forum." By this lawsuit, Plaintiff asks the Court to issue a declaratory judgment that Plaintiff's actions do not constitute trademark infringement and that Plaintiff is owner of the trademark registrations it has obtained for the Handprint Logo. Here, the jurisdictional allegations do not arise out of the cause of action in this case. They relate only to the development of Articulated Icons, Fwoosh intellectual property—without any mention of the Handprint Logo. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984). The facts alleged by Plaintiff in the Complaint (and Opposition), even if true, do not support the Court's exercise of jurisdiction and the Complaint must be dismissed. *Id.*; *see also Pebble Beach*, 453 F.3d at 1154.

## B. THE NEW ALLEGATIONS REGARDING GENERAL JURISDICTION IN PLAINTIFF'S OPPOSITION STILL FAIL AS THESE ALLEGED CONTACTS ARE NOT "SYSTEMATIC AND CONTINUOUS" SO AS TO RENDER FWOOSH, LLC "AT HOME" IN CALIFORNIA

Because the assertion of judicial authority over a defendant is much broader in the case of general jurisdiction than specific jurisdiction, a plaintiff invoking general jurisdiction must meet an "exacting standard" for the minimum contacts required. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015). "[G]eneral jurisdiction requires affiliations so continuous and systematic as to render the foreign corporation essentially at home in the forum State, i.e., comparable to a domestic enterprise in that State." *Daimler AG v. Bauman*, 571 U.S. 117, 133 n. 11 (2014) (citations, internal quotation marks and alterations omitted). Such contacts must be "constant and pervasive." *Id.* at 122. The paradigmatic locations where general jurisdiction is appropriate over a corporation are its place of incorporation and its principal place of business. *See id.* at 119. "Only in an 'exceptional case' will general jurisdiction be available anywhere else." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (citing *Daimler*, 571 U.S. at 139 n. 19).

Defendant has submitted the sworn declaration of Paul Wolf, the managing member for Defendant Fwoosh—the contents of which directly contradict virtually all of Plaintiff's jurisdictional allegations. Wolf asserts that it is a Texas limited liability company with its principal place of business in Texas; none of its active members, agents, or representatives, or employees are residents of California; it does not have a business presence, office, mailing address, or property in California; it does not conduct solicitation, advertising, or marketing activities targeting California residents; it does not have a service or sales network in California; and it does not pay sales or income tax in California. Wolf Declaration, ¶ 4. Further, Fwoosh did not hire or have any contract with California residents, Akers and

Aldrete, who both sought out Fwoosh unsolicited and participated voluntarily on the basis of their personal relationship as co-employees with Van Wickler (and not any formal relationship to Fwoosh). *See* DE. 15-2, pp. 4–5 (showing Aldrete stated he "poured a ton of time into this project without any contract"). Plaintiff has not presented any evidence effectively refuting these facts and the Court may only accept uncontroverted allegations as true. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977).

Plaintiff engages in no analysis to show how the conclusory allegations are so systematic and continuous so as to render Fwoosh at home in California, especially because Fwoosh is a business registered in Texas and its principal place of business is in Texas. *See Daimler*, 571 U.S. at 118, 137. *Cf.* Opposition, p. 10. Plaintiff, in support, states "two of its five initial members were residents of California at formation." However, as stated previously, ActionFigurePics.com (c/o Ron Mirasol) was formally voted out in 2013 and Van Wickler voluntarily dissociated himself in late 2018. This is not "continuous." *See* Wolf Declaration, ¶¶ 2, 6. Plaintiff also uses Matthew Kloberdanz to support Fwoosh's "systematic and continuous" presence in California. *See* Opposition, p. 10; Van Wickler Declaration, ¶ 4. However, Mr. Kloberdanz is not employed by Fwoosh and any contributions he makes to theFwoosh.com website are voluntary as are many other contributions by others. *See* Wood Declaration annexed to this Reply, ¶ 7.

Then, Plaintiff uses attendance at trade shows in California to support the exercise of jurisdiction. However, as attested to by Nic Wood, Fwoosh only hosted this booth at Power-Con in Anaheim, California one time as part of global fundraising efforts for a second round of funding for the Articulated Icons project. *See* Wood Declaration, ¶ 2. No products bearing the Handprint Logo were sold or offered for sale at this event not did they exist. *See id.* at ¶¶ 3–4. This single instance

is insufficient to support general jurisdiction. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1075 (9th Cir. 2011) ("AcademyOne's single trip to a trade show in San Diego is an isolated contact of just the type held inadequate to sustain general jurisdiction in *Helicopteros*."). There is an allegation with respect to Mr. Wood's attendance at San Diego Comic Con in 2019 contained in Van Wickler's Declaration, wherein Mr. Wood posted two updates to theFwoosh.com. *See* Van Wickler Declaration, ¶ 3 However, this action of Mr. Wood posting two updates to theFwoosh.com (unrelated to the cause of action asserted here), cannot be said to be sufficiently substantial corporate activity in the forum. *Congoleum Corp. v. DLW Aktiengesellschaft*, 729 F.2d 1240, 1242 (9th Cir. 1984) (finding no general jurisdiction despite solicitation of orders, promotion of products to potential customers through the mail and through showroom displays, and attendance at trade shows and sales meetings).

Then, Plaintiff asserts that Fwoosh had more donors that were California residents than were residents of any other state. *See* Opposition, p. 11. Even assuming this as true, "it is axiomatic that a business' advertising and sales directed towards consumers in a given forum cannot alone support general jurisdiction." *See, e.g., Martinez*, 764 F.3d at 1070; *Prescott v. Slide Fire Sols., LP*, 341 F. Supp. 3d 1175, 1183 (D. Nev. 2018). The court in *Daimler* rejected the argument that general jurisdiction is appropriate whenever a corporation "engages in a substantial, continuous, and systematic course of business" in a state. Id. at 138 (internal quotation marks omitted). It emphasized that the "paradigm" for general jurisdiction are a corporation's place of incorporation and principal place of business. *Daimler*, 571 U.S. at 118, 137–38 (internal quotation marks omitted). There is no exceptional case made here. *Id.* at 139 n. 19. *International Shoe* does not stand for the proposition that dispute-blind jurisdiction exists whenever "continuous and systematic" contacts

are found. *Daimler*, 571 U.S. at 138. Thus, subjecting Fwoosh to the general jurisdiction of courts in California is improper.

### C. THE COMPLAINT ALSO FAILS TO ALLEGE SPECIFIC JURISDICTION AS THESE ALLEGED CONTACTS ARE UNRELATED TO THE CAUSE OF ACTION ASSERTED

Plaintiff has never even stated that Fwoosh's contacts with California give rise to or relate to its cause of action. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015); *see also Butcher's Union Loc. No. 498, United Food & Com. Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (rejecting the notion that the Court is required to accept conclusory allegations of purposeful direction at the forum state). The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant "focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State. *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014). The Supreme Court has consistently rejected attempts to satisfy the defendant-focused "minimum contacts" inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State. *See Helicopteros*, 466 U.S. at 417.

Plaintiff cites, "[A] claim dependent on the existence of an underlying contract sounds in contract, as opposed to tort." *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015), but engages in no analysis that Fwoosh, LLC purposefully availed itself of the privilege of conducting business in California through any contracts. *Id.* There is simply no discussion of "substantial connection" with the forum state here. This argument would mistakenly "allow[ ] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *See id.* (citing *Walden*, 571 U.S. at 289). The plaintiff cannot be the only link between the defendant and the forum. *Walden*,

571 U.S. at 286. Further, "minimum contacts" analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there. *Id.* at 285. Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the "random, fortuitous, or attenuated" contacts he makes by interacting with other persons affiliated with the State. *Id.* at 286. Here, all other allegations by Plaintiff in the Opposition are the unilateral activities of Van Wickler, Akers, and Aldrete (members of the Plaintiff entity), claiming a relationship with nonresident defendant Fwoosh. These alleged activities are unrelated to the suit-related conduct of Defendant. Thus, this does not satisfy the requirement of contact with the forum state. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

In the instant case, Plaintiff only contends that some oral agreement created a substantial connection between Fwoosh and California because Akers and Aldrete fulfilled their obligations in California. *See Picot*, 780 F.3d at 1212–13. With respect to the contract of Van Wickler, the Fwoosh Operating Agreement was formed in Texas and it was understood Van Wickler would perform the majority of his work for Fwoosh in California, where Van Wickler did indeed discharge his duties of organizing manufacturing, design, and so on under the Agreement. *Id.* at 1212. This does not create a "substantial connection" between Fwoosh and California. Considering the contract between Van Wickler and Fwoosh and even assuming *arguendo* the existence of a contract between Fwoosh and Akers and Aldrete (which Aldrete has admitted did not exist, *see* DE. 15-2, pp. 4–5), "the fact *that a contract envisions one party discharging his obligations in the forum state cannot, standing alone, justify the exercise of jurisdiction* over another party to the contract." *Id.* at 1213 (emphasis added). The other jurisdictional allegation with respect to the density of California donors for Fwoosh's Articulated Icons line, which is not in dispute

9

here, Plaintiff has not put forward any evidence demonstrating that Defendant has ever targeted advertising or sales at California residents specifically. *See Tr. of Summers Fam. Tr. TA Neak Prod. Buff WA Pty, Ltd. v. Nat'l Distribution Warehouse, Inc.*, No. 2:20-CV-10741-CAS-EX, 2021 WL 2354507, at *7 (June 7, 2021). In fact, Wolf has expressly stated there is no targeting of California specifically. *See* Wolf Declaration, ¶ 4. All advertising and marketing efforts are global and not intentionally concentrated to any particular geographic locale suggesting purposeful availment. There is no set of facts that would confer the exercise of personal jurisdiction in this case. Thus, the Complaint should be dismissed with prejudice. *Pebble Beach*, 453 F.3d at 1154.

### D. FWOOSH HAS NOT WAIVED ITS ARGUMENT REGARDING DISMISSAL FOR LACK OF PERSONAL JURISDICTION

Regarding alleged waiver, Plaintiff's argument that the motion to compel is not brought in the alternative is facetious and a desperate attempt to avoid the complete lack of personal jurisdiction. *See* Opposition, pp. 12–13. The Motion to Transfer Venue and Compel Arbitration was brought in the alternative. To wit, the Motion under FED. R. CIV. P. 12(b)(3) moves to dismiss for improper venue, but asserts in the alternative, a transfer to arbitration on forum non conveniens grounds under 28 U.S.C. Section 1404(a), which is the appropriate doctrinal analysis for seeking a non-federal forum. *See* Motion, p. 22 ("Thus, venue is improper and [the case] should be dismissed. However, in the alternative, the action should be transferred via § 1404(a), which provides a mechanism for enforcement of forum selection clauses. . . . An arbitration provision can properly be construed as a forum selection clause."); *see also Milliner v. Bock Evans Fin. Couns., Ltd.*, 114 F. Supp. 3d 871, 876 (N.D. Cal. 2015). Defendant's Motion to Compel Arbitration enumerates support for transfer to the non-federal forum arbitration in Texas and

10

asks the Court to assert its power only as to Plaintiff (who have consented to jurisdiction by virtue of filing). No relief sought supports the exercise of jurisdiction by this Court as to Defendant. In further support, the Proposed Order submitted with the Motion states, "On Defendant's alternative Motion to Transfer under 28 U.S.C. Section 1404(a) and Motion to Compel Arbitration . . . " *See* DE. 26-6. Thus, this argument is misplaced and should not be given any distinct weight by the Court so that Plaintiff does not have to contend with the merits of the jurisdictional analysis.

### III. MOTION TO DISMISS FOR IMPROPER VENUE PURSUANT TO RULE 12(b)(3) OR, IN THE ALTERNATIVE, TRANSFER

Plaintiff neglects entirely the Motion to Dismiss the Complaint for improper venue. In the instant Case, the Central District of California is not a judicial district in which any defendant resides, a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." *See* 28 U.S.C. § 1391. This case does not fall into any of these categories, and the case must be dismissed as venue is improper. However, Defendant argued, in the alternative, that venue could be transferred to the non-federal forum of arbitration under 28 U.S.C. § 1404 forum non conveniens grounds.

### IV. MOTION TO COMPEL ARBITRATION

As stated in the Motion, crucial to understanding why arbitration should be compelled in Texas against Hand Candy is the fact that Hand Candy is being used as a shield to prevent the assertion of counterclaims against signatory Van Wickler in the Texas arbitration stemming from his wrongful conduct in starting a competing business venture and misappropriating Fwoosh intellectual property, including the Handprint Logo. *See* Motion, p. 23 ("any member could circumvent the Agreement by starting a competing business with his cohorts just because it would just be considered a nonparty and subsequently excluded from arbitration."). Plaintiff

alleges that signatory Van Wickler "lacked authority to bind Hand Candy" to the Agreement; however, he created the competing entity Hand Candy in direct violation of the Agreement—a fact that is undisputed. *See* DE 11-1, § 4.05. The equities favor compelling arbitration against Hand Candy. Plaintiff boils it down to "Party A and Party B simply cannot agree amongst themselves to arbitrate their disputes with Party C" without acknowledgement that Party B created Party C in violation of his Agreement with Party A. *Cf.* Opposition, p. 14. Thus, Hand Candy should be ordered to arbitrate this claim in Texas.

## V.  MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO RULE 12(b)(6)

Plaintiff makes reference to their existing trademark registrations providing prima facia evidence of the validity of their registrations and their ownership of the trademarks. This argument is improper in the context of a FED. R. CIV. P. 12(b)(6) Motion because it ignores the authority to cancel improperly granted registrations under 15 U.S.C. § 1119. Sections 1064 and 1119 of the Lanham Act were enacted to provide relief to parties, such as Defendant, where the USPTO has improperly granted a trademark registration. Plaintiff has failed to state a claim because it does not, as a matter of law, assert, a invoice is not at legal trademark use as a matter of law, or show a date of first use as a trademark senior to Defendant—Hand Candy's February 2020, as stated under oath in its U.S. trademark registrations to Fwoosh's use on boxes in June 2017 which is a recognized trademark use by affixing it on product containers. Thus, the Complaint should be dismissed.

Dated August 29, 2021.           Respectfully submitted,

/s/ Paul D. Supnik
PAUL D. SUPNIK
Attorney for Defendant Fwoosh, LLC

12